**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.  BRIAN ALLEN, an individual; | ) | |
| 2.  MASA ENERGY, LLC, a Texas | ) | |
|      Limited liability company; | ) | |
| 3.  MICHAEL E.  & CAROLE-PETERSON | ) | |
|      BAKER, husband and wife; | ) | |
| 4.  DAN BUSHMAN, an individual; | ) | |
| 5.  QUAIL TRUST, DATED 11/1/1995, TRAVIS | ) | |
|      C. CARR, TRUSTEE; | ) | |
| 6.  RON COOPER, an individual; | ) | |
| 7.  DARYL GORDON, an individual; | ) | |
| 8.  HALTER, LLC; | ) | |
| 9.  ANNE HUMEN, an individual; | ) | |
| 10. MONTE & ROBYN JOHNSON, | ) | Case No. 4:16-cv-00200-GKF-TLW |
|      Husband and wife; | ) | |
| 11. CHUCK KAYE, an individual; | ) | |
| 12. JERRY LOPEZ, an individual; | ) | Judge Frizzell |
| 13. RANDALL MARKUM, an individual; | ) | |
| 14. MERRITT, LLC; | ) | |
| 15. LARRY & JUDITH MEYERS; | ) | |
|      Husband and wife; | ) | JURY TRIAL DEMANDED |
| 16. ALLEN RAFERT, an individual; | ) | |
| 17. INTREPID RESOURCES, LLC; | ) | |
| 18. KYRON RAMOO, an individual; | ) | ATTORNEY LIEN CLAIMED |
| 19. ROBERT SEGULJA, an individual; | ) | |
| 20. JOHN TEIGE, an individual; | ) | |
| 21. MARK TIENSVOLD, an individual; | ) | |
| | ) | |
| | ) | |
|                    Plaintiffs, | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| | ) | |
| 1.  SEMPER FIDELIS OIL & GAS, LLC, | ) | |
|      A Texas limited liability company; | ) | |
| 2.  NUCO ENERGY, LLC, a Nevada limited | ) | |
|      liability company; | ) | |
| 3.  NICK'S OIL AND GAS; | ) | |
| 4.  NEO OILFIELD SERVICES; | ) | |
| 5.  NICHOLAS P. YUKICH III, an individual; and | ) | |
| 6.  JERRY GRIGGS, an individual; | ) | |
| | ) | |
| | ) | |

Defendants.                    )

## AMENDED COMPLAINT

COME NOW Plaintiffs BRIAN ALLEN, MASA ENERGY, LLC, MICHAEL E. & CAROLE PETERSON-BAKER, DAN BUSHMAN, QUAIL TRUST, DATED 11/1/1995, TRAVIS C. CARR, TRUSTEE, RON COOPER, DARYL GORDON, HALTER, LLC, ANNE HUMEN, MONTE & ROBYN JOHNSON, CHUCK KAYE, JERRY LOPEZ, RANDALL MARKUM, MERRITT LLC, LARRY & JUDITH MYERS, ALLEN RAFERT, INTREPID RESOURCES, LLC, KYRON RAMOO, ROBERT SEGULJA, JOHN TEIGE, MARK TIENVSOLD, (hereinafter "Investors" or "Plaintiffs"), by and through Levinson, Smith and Huffman, P.C., their attorneys of record, and for their Amended Complaint against SEMPER FIDELIS OIL & GAS, LLC, NUCO ENERGY, LLC, NICK'S OIL & GAS, NICHOLAS P. YUKICH, III, and JERRY GRIGGS (hereinafter "Defendants"), allege and state as follows:

## JURISDICTION AND THE PARTIES

1.      This is an action for relief under the provisions of Section 17(a) (15 USC § 77q et seq.) and Sections 12(a)(1) and (2) (15 USC § 77l) of the Securities Act of 1933, as amended ("the Securities Act"), Section 10(b) (15 USC § 78j(b)) of the Securities Exchange Act of 1934, as amended ("the Exchange Act"), and Rule 10b-5 thereunder (17 CFR § 240.10b-5).

2.      Jurisdiction of this Court is conferred by Section 22 of the Securities Act (15 USC § 77v) and Section 27 of the Exchange Act (15 USC § 78aa).

3.      One or more of the defrauded investors in this case resides in the Northern District of Oklahoma.

4.      Venue is proper in this judicial district under 28 USC § 1391 (b)(2) as this is a judicial

district in which a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.  Further, venue is proper under the Securities Act and the Exchange Act and Rule 10-b-5 thereunder (17 C.F.R. § 240.10b-5).

5.      At all times relevant herein, the conduct and activities of the Defendants were directed to one or more Plaintiffs and have resulted in harm in Tulsa County, Oklahoma.

6.      Personal jurisdiction over the Defendants comports with the requirements imposed by the United States Constitution.

## BACKGROUND

7.      On or around August of 2013, several of the Plaintiffs began investing with Harbor Resources ("Harbor Investors") to drill, complete, and produce the Nuco #A-1 and #A-2 Wells in Okmulgee County, Oklahoma, with investors expecting to receive a working interest in the Okmulgee Wells in exchange for their investments.  The Okmulgee County investment was sold as a "turnkey" investment.

8.      Shortly thereafter, Defendants, with the assistance of Michael Hanberry and BJT Consulting, Inc. began steering those Harbor Investors that had invested in the Okmulgee Wells towards the "Glenpool Oilfield Extension Muskogee County, Oklahoma" ("Glenpool Scheme").  Defendants utilized the United States Postal Service, the internet, and telephonic communications to assist in steering investors to the Glenpool Scheme.

9.      Defendants not only steered the Harbor Investors towards the Glenpool Scheme, but also solicited new investments in the Glenpool Scheme.

10.     Once the Harbor Investors were steered to the Glenpool Scheme, Defendants represented to some, if not all, Harbor Investors that they had to purchase interests in the Glenpool Scheme's Hoover #4, Hoover #5C, and Hoover #5R Wells in order to maintain their

existing investment.  According to Defendants, investors would lose any investment in the Okmulgee Wells if they did not invest in the Glenpool Scheme's Hoover #4, Hoover #5C, and Hoover #5R Wells.

11.     Once Defendants steered the Harbor Investors and new investors towards investing in the Glenpool Scheme, all Defendants prepared and provided promotional materials and prospectuses on the Glenpool Scheme to the investors. Nuco Energy, Inc. would be the approved operator of the wells pursuant to the rules of the Oklahoma Corporation Commission.

12.     The promotional materials provided to the investors claim that the Glenpool Scheme Wells (Hoover #1, Hoover #2 , Hoover #3, Hoover #4, Hoover #5C, and Hoover #5R), will each drain approximately twenty (20) acres of oil each.  Therefore, exploring for, drilling, completing, and producing six (6) wells at considerable expense.  Further, the "turnkey" project was also promoted with inflated drilling and completion numbers. These numbers, along with the production capability, were materially are false and misleading, and there is no basis, geological or otherwise, supportive of these representations.

13.     Further, the promotional materials included cashflow potential based on oil and gas production that was inflated, totally unrealistic and had no basis whatsoever.  These misrepresentations by Semper Fidelis and Yukich were submitted to investors via electronic mail and the United States mail and enticed investors to invest in the Glenpool Scheme.

14.     For example, the promotional materials claim that the Hoover # 1 Well will produce at least 87,817 barrels of oil over its productive life.  This is false, and there is no basis,

geological or otherwise, supportive of this representation.

15. The promotional materials claim that the Hoover # 2 Well will produce up to 229,599 barrels of oil during primary recovery and produce as much as 344,599 barrels of oil after primary, secondary, and tertiary recovery.  This is false, and there is no basis, geological or otherwise, supportive of this representation.

16. The promotional materials claim that the Hoover # 3 Well will produce up to 297,296 barrels of oil during primary recovery and as much as 467,296 barrels of oil after primary, secondary, and tertiary recovery.  This is false, and there is no basis, geological or otherwise, supportive of this representation.

17. The promotional materials claim that the Hoover # 4 Well will produce up to 169,230 barrels of oil during primary recovery and as much as 237,230 barrels of oil after primary, secondary, and tertiary recovery.  This is false, and there is no basis, geological or otherwise, supportive of this representation.

18. The promotional materials claim that the Hoover # 5C Well will produce up to 254,303 barrels of oil during primary recovery and as much as 336,303 barrels of oil after primary, secondary, and tertiary recovery. This is false, and there is no basis, geological or otherwise, supportive of this representation.

19. The promotional materials claim that the Hoover # 5C Well will produce up to 254,303 barrels of oil during primary recovery and as much as 336,303 barrels of oil after primary, secondary, and tertiary recovery. This is false, and there is no basis, geological or otherwise, supportive of this representation.

20. Based on the above misrepresentations as well as other misrepresentations by the Defendants, the Harbor Investors and other Investors invested in the Hoover Wells with

the expectation of receiving a certain percentage of the working interest in each of the aforementioned wells.

21.     Once the investors made their payments to the Defendants, the defendants deposited, or caused to be wired these certain investor funds into their own accounts.

22.     Not all of the Plaintiffs invested in every well.  Rather, some investors paid for working interest in some wells but not in other wells.

<h4 style="text-align:center;">a.      Investment in Hoover # 1 and Hoover # 2 Wells</h4>

23.     Halter LLC invested $33,150.00 with Defendants in exchange for 3% of the Working Interest (WI) in the Hoover #1 and Hoover #2 Wells.

24.     Thomas and Patricia Ryan invested $78,000.00 with Defendants in exchange for 6.0% WI Hoover #1 and Hoover #2 Wells.

25.     Merritt, LLC invested $234,000.00 with Defendants in exchange for 18% WI in the Hoover #1 and Hoover #2 Wells.

26.     Brian Allen invested $39,000.00 with Defendants in exchange for 3% WI in the Hoover #1 and Hoover #2 Wells.

27.     Michael E. & Carole Peterson-Baker, husband and wife, invested $78,000.00 with Defendants in exchange for 6% WI in the Hoover #1 and Hoover #2 Wells.

28.     Quail Trust, Dated 11/1/95, Travis Carr, Trustee, invested $25,410.00 with Defendants in exchange for 1.96% in the Hoover #1 and Hoover #2 Wells.

29.     Ron Cooper invested $13,000.00 with Defendants in exchange for 1% WI in the Hoover #1 and Hoover #2 Wells.

30.     Daryl Gordon invested $25,410.00 with Defendants in exchange for 1.96% WI in the Hoover #1 and Hoover #2 Wells.

31.    Randall Markum invested $19,500.00 with Defendants in exchange for 1.5% WI in the Hoover #1 and Hoover #2 Wells.

32.    John Teige invested $78,000.00 with Defendants in exchange for 6% WI in the Hoover #1 and Hoover #2 Wells.

33.    Intrepid Resources, LLC invested $117,120.00 with Defendants in exchange for 10.6% WI in the Hoover #1 and Hoover #2 Wells.

34.    Dan Bushman invested $130,000.00 with Defendants in exchange for 10% WI in the Hoover #1 and Hoover #2 Wells.

35.    Kyron Ramoo invested $51,635.00 with Defendants in exchange for 3.97% WI in the Hoover #1 and Hoover #2 Wells.

36.    Based on Defendants' gross misrepresentations of the productive capabilities of the Hoover # 1 and Hoover # 2 Wells, Defendants solicited and received monetary investments totaling $922,000.00 from Plaintiffs in exchange for a promise to assign Plaintiffs their proportionate share of the working interest in the Hoover # 1 and Hoover # 2 Wells.

37.    Further, besides Defendants obtaining funds fraudulently, they used those solicited funds for purposes other than exploration, drilling, completion, and operations of the subject wells.

38.    Currently, only Thomas Ryan and Patricia Ryan have received their working interest Assignment.

**b.    Investment in the Hoover # 3 Well**

39.    Merritt, LLC invested $152,000.00 with Defendants in exchange for 20% WI in the Hoover #3 Well.

40. Based on Defendants' gross misrepresentations of the productive capabilities of the Hoover # 3 Well, Defendants solicited and received monetary investments totaling $152,000.00 in exchange for 20% WI in the Hoover # 3 Well.

41. Further, besides Defendants obtaining those funds fraudulently, they used those solicited funds for purposes other than exploration, drilling, completion, and operating the subject Wells.

42. Currently, no working interest assignment has been received by Jim Merritt.

   c.     **Investment in the Hoover # 4, Hoover # 5C, and Hoover # 5R Wells**

43. Halter LLC, invested $64,743.75 with Defendants in exchange for 4.25% WI in the Hoover #4, Hoover #5C, and Hoover #5R Wells.

44. Merritt, LLC, invested $234,000.00 with Defendants in exchange for 18% WI in the Hoover #5C and Hoover #5R Wells.

45. Dan Bushman invested $205,950 with Defendants in exchange for 10% WI in the Hoover #4, Hoover #5C, and Hoover #5R Wells.

46. Anne Humen invested $25,734.75 with Defendants in exchange for 1.25% WI in the Hoover #4, Hoover #5C, and Hoover #5R Wells.

47. Daryl Gordon invested $39,000.00 with Defendants in exchange for 3% WI in the Hoover #4, Hoover # 5C, and Hoover # 5R.

48. Allen Rafert invested $51,487.50 with Defendants in exchange for 2.5% WI in the Hoover #4, Hoover # 5C, and Hoover #5R Wells.

49. Chuck Kaye invested $19,500.00 with Defendants in exchange for a 1.50% WI working interest in the Hoover #4, Hoover #5C, and Hoover #5R Wells.

50. Jerry Lopez invested $51,487.50 with Defendants in exchange for 5% WI  in the Hoover

#4, Hoover # 5C, and Hoover # 5R Wells.

51.     John Teige invested $51,487.50 with Defendants in exchange for 2.5% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

52.     Kevin Halter invested $39,000 with Defendants in exchange for 3% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

53.     Halter LLC invested  $25,740.75 with Defendants in exchange for 1.25% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

54.     Kyron Ramoo invested $25,487.50 with Defendants in exchange for 1.25% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

55.     Larry and Judith Meyers invested $39,000 with Defendants in exchange for 3% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

56.     Mark Tiensvold invested $25,743.75 with Defendants in exchange for 1.25% WI  in the Hoover #4, Hoover # 5C, and Hoover # 5R Wells.

57.     Quail Trust, dated 11/5/1995, Travis Carr, Trustee, invested $39,000.00 with Defendants in exchange for 3% of the working interest in the Hoover #4, Hoover # 5C, and Hoover #5R Wells.

58.     Masa Energy invested $78,000.00 with Defendants in exchange for 6% of the working interest in the Hoover #4, Hoover #5C, and Hoover #5R Wells.

59.     Based on Defendants' gross misrepresentations of the productive capabilities of the Hoover # 1 and Hoover # 2 Wells, Defendants solicited and received monetary investments totaling $1,002,374.00 from Plaintiffs in exchange for a promise to assign Plaintiffs their proportionate share of the working interest in the Hoover # 4, Hoover # 5C, and Hoover #5R Wells.

60. Further, besides Defendants obtaining funds fraudulently, they used those solicited funds for purposes other than exploration, drilling, completion, and operations of the subject wells.

61. Currently, no working interest Assignments have been received by any of the investors other than Thomas Ryan and Patricia Ryan.

**d.     Production of Oil and Gas from the Hoover Wells**

62. Defendant NUCO was the operator of the Hoover Wells.  Defendant Jerry Griggs owns NUCO.

63. According to the Oklahoma Tax Commission, Dorado Oil Company ("Dorado") purchased 158.97 barrels of oil from the Hoover # 4 Well in July 2015, 162.71 barrels of oil in November 2015, and 414.13 barrels of oil in December 2015.

64. Scissortail Energy, LLC purchased 287 mcf of natural gas from the Hoover #1 Well in November 2015.

65. The monetary value of the 162.71 barrels of oil Dorado purchased in November 2015, $5,664.35, was paid into the District Court Registry for the 298th Judicial District Court of Dallas County, Texas pursuant to Court Order.

66. Kirk Tank Trucks purchased 145.26 barrels of oil on January 19, 2016, and has paid Defendants $3,073.13 for the sale of this oil.

67. There has been no accounting and no distribution of proceeds from the sale of natural gas to the investors based on their proportionate share of the working interest in the Hoover Wells.

68. There has been no distribution of oil proceeds from the Hoover Wells to any of the working interest owners, even though oil and gas has been produced and sold from the

Hoover Wells.

69.     In addition to the above and foregoing, Defendants have used a substantial portion of the investment funds for purposes other than to drill, complete, and produce oil and gas from the Glenpool Scheme.   Specifically, Defendants have purchased personal property, including vehicles, Jet Skis, Trailers, and other property with investor funds. Defendants have also used investor funds to pay for personal services, including helicopter rides while on vacation.   Further, Defendants have purchased oilfield equipment with investor funds that has not been used on the Hoover Wells.

70.     Defendants Nick's Oil and Gas and NEO Oilfield Services are alter egos of Nicholas P. Yukich, III, Jerry Griggs, Semper Fidelis, and NUCO and have also received defrauded investor funds and utilized those funds for purposes other than use on the Hoover Wells.

71.     Defendants have also utilized the United States Postal Service and the United States banking system, including its telecommunications and information technology, to further advance the Glenpool Fraud Scheme, as well as convert investor funds for their own use.

## COUNT I

72.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

73.     Pursuant to representations made by the Defendants, Plaintiffs entered into Participation Agreements and invested substantial sums of money with the expectation of receiving working interest in the Hoover Wells.

74.     The acts described herein involved the purchase and sale of securities within the meaning of Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act by means of oral communications, by use of the mails, and by the use of the means and

instrumentalities of interstate commerce.

75.    Tulsa County, Oklahoma is one location where a substantial portion of the actions and occurrences complained of herein occurred.  Tulsa County, Oklahoma is the county of resident of the Plaintiff Brian Allen.

76.    All Defendants participated in the offer and sale of these securities.

77.    The Defendants and each of them made false and misleading statements and are primary violators in the actions complained of herein.

78.    The securities offered and sold by the Defendants to Plaintiffs were offered and sold by the Defendants in violation of Section 12 (1) of the Securities Act.

79.    Plaintiffs have been required to employ an attorney to prosecute this action and are entitled to recover their reasonable attorney's fees and costs as well as damages and attorney's fees and costs for the violation of Section 12(1) of the Securities Act.

80.    Plaintiffs are entitled to damages in excess of $75,000.00, interest and reasonable attorney's fees and costs for the violation of Section 12(1) of the Securities Act.

## COUNT II

81.    Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

82.    Defendants engaged in other manipulative activities and fraudulent courses of conduct in regard to their sale of these securities to the Plaintiffs.

83.    The foregoing misrepresentations and omissions concern material facts which were made in and/or omitted from oral communications from the Defendants to the Plaintiff in connection with its purchase of securities from the Defendants.

84.    At the time Plaintiffs purchased securities from Defendants, the Plaintiffs did not know of

-12-

the untruth of the facts misstated. Therefore, Defendants violated Section 12(2) of the Securities Act in connection with their sale of these securities to the Plaintiffs.

85.     Plaintiffs are entitled to damages in excess of $75,000.00, interest and reasonable attorney's fees and costs for the violation of Section 12(2) of the Securities Act.

## COUNT III

86.     Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

87.     Plaintiffs allege that untrue statements of material facts, the omission of material facts and the manipulative and fraudulent activities and the fraudulent course of conduct of the Defendants in connection with the sale to Plaintiffs of securities were in violation of Section 10(b) of the Exchange Act and Rule 10-b-5 thereunder.

88.     The alleged misstatements were made by the Defendants with complete knowledge of their falsity and Defendants knowingly omitted to state to Plaintiffs the facts alleged to have been omitted and that these facts were material.

89.     Plaintiffs did not know of the falsity of the Defendants' warranties and representations.

90.     Further, the Defendants knew certain facts were omitted and the Plaintiffs relied upon these statements of facts which were made by the Defendants.

91.     Therefore, as a result of these untrue statements, omissions, manipulative and fraudulent activities and fraudulent courses of conduct the Plaintiffs have suffered damages in excess of $75,000.00.

92.     The statements made by the Defendants were knowingly made with wanton and total disregard of the rights of Plaintiffs.

93.     Plaintiffs should be entitled to recover exemplary or punitive damages in an amount to be

determined by the Court in order to deter the future conduct of Defendants and to set an example for others not to engage in this course of conduct.

## COUNT IV

94.   Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

95.   The Plaintiffs allege that the misstatements, omissions, manipulations and fraudulent activities and the fraudulent conduct of the Defendants constitute a violation of Section 17(a) of the Securities Act and, as a result thereof, Plaintiffs has sustained damages in an amount of no less than $75,000.00.

## COUNT V

96.   Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

97.   The actions of Defendants in the offer and sale of the securities to Plaintiffs were violative of the Oklahoma Securities Act.

98.   Defendants violated certain provisions of the Oklahoma Securities Act, including Okla. Stat. tit. 71, § 510 *et seq*, as a result of their schemes and artifices to defraud Plaintiffs by making untrue statements, omitting material facts and engaging in acts practiced in the course of business which operated as a fraud and deceit upon Plaintiffs.

99.   Defendants made material false representations and their actions were deceitful to Plaintiffs.  Defendants were aware that they were misstating material facts and omitting to state material facts to Plaintiffs. Further, Defendants knew the Plaintiffs would rely on these representations.

100.  Plaintiffs expressly relied upon the misrepresentations of Defendants and the actions of

Defendants to Plaintiffs constituted fraud.

101.   The deceit and/or fraud perpetrated by Defendants upon Plaintiffs was knowingly and willfully done by Defendants with total disregard to the rights of Plaintiffs, who relied upon that deceit and/or fraud.

102.   Defendants' conduct offends public policy and is unfair and involves practices which are immoral, unethical, oppressive, unscrupulous, and unconscionable.

103.   Accordingly, Plaintiffs request that they be awarded punitive and exemplary damages.

104.   In all the circumstances, Defendants' extensive unlawful conduct constitutes aggravated misconduct that is morally reprehensible.

105.   The unlawful conduct of the Defendants constitutes intentional or reckless conduct that justifies the imposition of punitive damages against Defendants, under Okla. Stat. tit. 23, § 9.1, in an amount not less than $75,000.

## COUNT VI

106.   Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

107.   Defendants' actions and inactions are in breach of the Agreements.

108.   As a result of the breaches of contract in addition to Defendants unjust enrichment, Plaintiffs have suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest.

## COUNT VII

109.   Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

110.   Defendants made negligent misrepresentations to Plaintiffs.

-15-

111.   As a result of Defendants' negligent misrepresentations, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest.

## COUNT VIII

112.   Plaintiffs reallege all allegations contained in the preceding paragraphs of this Amended Complaint.

113.   Defendants have converted proceeds from production as well as equipment and personal property from the Hoover Wells that rightfully belong to the Plaintiffs.

114.   As a result of Defendants' conversion, Plaintiffs have suffered damages not in excess of $75,000.00.

## COUNT IX

115.   Defendants engaged in a deliberate and intentional scheme of fraud, including wire fraud, from which they derived monetary benefits.

116.   Once defendants had possession of the invested funds, Defendants utilized the United States Banking System, including lines of communication and information technology to convert invested funds for their own use, as well as continue and perpetuate the fraud, thereby committing wire fraud.

117.   As a result of Defendants' deliberate and intentional scheme of fraud, including mail fraud and wire fraud, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest, and are entitled to rescind their various Participation Agreements with Defendants.

## COUNT X

118.   Defendants engaged in a deliberate and intentional scheme of fraud, including mail fraud, from which they derived monetary benefits.

119.    Defendants utilized the United States Postal Service to fraudulently procure investor funds, thereby committing mail fraud.  Defendants also utilized the United States Postal Service to continue and perpetuate the fraud from which they derived monetary benefits.

120.    As a result of Defendants' deliberate and intentional scheme of fraud, including mail fraud, Plaintiffs suffered damages in excess of $75,000.00 as well as attorney fees, costs and interest, and are entitled to rescind their various Participation Agreements with Defendants.

WHEREFORE, investor Plaintiffs demand judgment against all Defendants for actual damages in an amount not less than $75,000.00 with interest thereon and exemplary damages in an amount not less than $75,000.00. In addition, Plaintiffs request that the Court grant them attorney fees, costs, and any other relief the Court deems necessary and proper.

*s/Lee I. Levinson*
Lee I. Levinson, OBA #5395
Terence P. Brennan, OBA #10036
Evan M. McLemore, OBA #31407
leelevinson@sbcglobal.net
terry.brennan@lsh-law-firm.com
evan.mclemore@lsh-law-firm.com
LEVINSON, SMITH & HUFFMAN, P.C.
1743 E. 71st Street
Tulsa, OK  74136-5108
(918) 492-4433
(918) 492-6224 (Fax)
ATTORNEYS FOR PLAINTIFFS